## STATE OF VERMONT
## SUPERIOR COURT - ENVIRONMENTAL DIVISION

|  |  |  |
|---|---|---|
| **In re All Metals Recycling, Inc.** | } | |
| (DRB Permit Appeal) | } | Docket No. 171-11-11 Vtec |
| | } | |

## Decision on the Merits

Before us is the appeal of a discretionary zoning permit allowing Appellee All Metals Recycling, Inc. (All Metals) to establish an outdoor storage area and install a scale house and scale at 38-42 Dorset Lane in the Town of Williston, Vermont (Property) to conduct a "metals recycling operation." Appellee Riggs Properties and Interested Person the Town of Williston, Vermont (the Town) are owners of the properties on which All Metals seeks to conduct its proposed project. Appellants Darlene Ashley, John Chandler, James Babcock, Jennifer Ashley, William Babcock, Shawn Chapman, William Burnett, Jeannine Burnett, Patty Shortsleeves, George Shortsleeves, Gary Boutin, Michael Burnett, and Mark Burnett (hereinafter referred to as Neighbors) appeal the Town of Williston Development Review Board's decision granting the permit with conditions.

In an April 23, 2012 decision, we disposed of Neighbors' original Questions 1, 2, 6, 7, and 9 and granted Neighbors' motion to amend their Statement of Questions to include a Question 10. In re All Metals Recycling, Inc., No. 171-11-11 Vtec, slip op. at 11–12 (Vt. Super. Ct. Envtl. Div. Apr. 23, 2012) (Walsh, J.). Additionally, in an April 4, 2013 decision we granted summary judgment to All Metals on Neighbors' Questions 3, 4, and 5, we dismissed Neighbors' Question 8 as beyond our subject matter jurisdiction, and we denied Neighbors' second motion to amend their Statement of Questions, thereby declining to review Neighbors' proposed Question 11. In re All Metals Recycling, Inc., No. 171-11-11 Vtec, slip op. at 12 (Vt. Super. Ct. Envtl. Div. Apr. 4, 2013) (Walsh, J.). Only one question, Neighbor's Question 10, remains for our review: "Should Applicants have been denied a Discretionary Permit where Applicants failed to demonstrate adequate provision for off-street parking and loading as required by Chapter 14 of the Bylaw?" (Neighbors' Am. Statement of Questions at 3, filed Feb. 23, 2012.) Thus, the scope of our review is narrowly limited to whether the project's off-street parking and loading complies with the Town's Bylaw.

1

The Court conducted a site visit to the property on July 9, 2013, immediately followed by a single day merits hearing at the Vermont Superior Court, Chittenden Civil Division courthouse in Burlington, Vermont. Appearing at the site visit and trial were Mark L. Sperry, Esq. and Hobart F. Popick, Esq., Attorneys for the Appellant Neighbors, Robert F. O'Neill, Esq. and David A. Boyd, Esq., Attorneys for Appellees All Metals Recycling, Inc. and Riggs Properties, and Paul S. Gillies, Esq., Attorney for Interested Person Town of Williston.

Based upon the evidence presented at trial, put into context by the site visit, the Court renders the following Findings of Fact and Conclusions of Law.

**Findings of Fact**

1. All Metals maintains a place of business at 38-42 Dorset Lane, Williston, Vermont (the Williston facility). All Metals seeks a discretionary permit for the Williston facility specifically for outdoor storage, a scale, and a scale house.

2. The Williston facility is located in the Town's Gateway Zoning District North (GDZN District).

3. The Williston facility consists of a portion of an existing building and a portion of an existing parking lot and associated grounds which All Metals subleases from ReSOURCE: A Nonprofit Community Enterprise, Inc. (ReSOURCE).

4. No physical changes are proposed for the building. The existing parking surface will remain unchanged, however, a scale and scale house have been constructed within and adjacent to the northern portion of the existing parking surface.

5. Within its leased area, All Metals proposes to paint parking space lines upon the parking lot surface which currently has no lines.

6. The building is surrounded to the south, east, and north by the existing parking lot.

7. The eastern and southern sides of the existing parking lot are located within 25 feet of James Brown Drive and Dorset Lane.

8. All Metals does not lease, propose any activity upon, or propose any physical modification to the eastern and southern portions of the existing parking lot.

9. The Town planning commission approved the original building and parking lot in 1982.

10. Neighbors assert that changes were previously made to the building and parking lot without necessary permits.

11. The building is approximately 180 feet by 60 feet in size and is two stories tall.

12. The building is owned as two separate condominium units. Riggs Properties owns one unit and Raymond and Gloria Charbonneau own the other.

13. Riggs Properties leases approximately 9,600 square feet of building space to ReSOURCE, Inc. along with an exterior portion of the lot on the north side of the property.

14. ReSOURCE, Inc. in turn subleases to All Metals approximately 463 square feet of building space as well as a majority of ReSOURCES' exterior space, including parking space, on the north side of the building.[1]

15. All Metals is one of three tenants in the 38-42 Dorset Lane building.

16. All Metals occupies two interior areas of the building, including a small office and a processing room containing hydraulic shears, mechanized Sawzall saws, and a platform scale.

17. On May 7, 2012, All Metals entered into a written lease with the Town authorizing All Metals' use of 0.27 acres of the Town's land located directly north of the land leased from ReSOURCE.

18. All Metals formally amended its sublease agreement with ReSOURCE in June 2013 to confirm that All Metals has exclusive use of 10 parking spaces available to it within the area subleased by All Metals.

19. Three All Metals employees work at the Williston facility. Additionally, a manager is on-site approximately half-time. Williston facility to the general public.

20. The Williston facility is open for business from 8 a.m. to 4 p.m. Monday to Friday and 8 a.m. to 1 p.m. on Saturday.

21. The Williston facility services between 5 and 10 customers per day, and each customer visit typically lasts between 15 and 20 minutes. In the past, when the facility was busy, up to 4 or 5 customers may have been at the facility at one time—one in process and the others awaiting service.

22. At the Williston facility, All Metals purchases scrap metals from individuals and businesses for resale to third parties.

23. All Metals advertises its services at the ls does not accept garbage or trash at the Williston facility.

---

[1] In an earlier decision in this case we stated that the approximate size of All Metals' interior space was between 180 and 270 square feet based on the estimates provided by the parties at that time. In re All Metals Recycling, Inc., No. 171-11-11 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. Apr. 4, 2013) (Walsh, J.). At trial the parties presented more specific evidence of the actual building space leased to All Metals.

24. Trucks carrying metals arrive at the facility and are weighed and then unloaded. The trucks are then weighed again while empty. In some cases, All Metals will pick up a customer's scrap metal and haul it to the Williston facility.

25. At the Williston facility, All Metals sorts and aggregates the metals it purchases. All Metals aggregates the scrap metal so that it may be shipped in a cost-effective manner. Aggregation may include trimming the metals using hydraulic shears and mechanized Sawzall saws and compacting the metals using a mechanized compactor. The aggregation process may also include the use of a tandem excavator and a skid steer.

26. Once the metals are sorted and aggregated, All Metals trucks the metals to either its location in Hardwick, Vermont or directly to a purchaser. All Metals sells the metals to customers who are not "end users," but who include mills, processors, and refiners.

27. Prior to the filing of the permit application at issue in this case, All Metals conducted its business at the Williston facility without a permit from the Town.

28. All Metals' Parking Space Layout Plan, Exhibit C, depicts the 10 parking spaces for All Metals' exclusive use within the area subleased from ReSOURCE. An additional 4 employee parking spaces are located on the portion of Town property leased by All Metals. One handicap space is provided in front of the building space leased by All Metals.

29. All of All Metals' proposed parking spaces satisfy the dimensional requirements set for in Bylaw Table 14.C.

30. Bicycle parking is not provided for in the Parking Space Layout Plan.

31. All Metals proposes supplemental plantings along the northern portion of the 0.27 acres leased from the Town.

32. Existing vegetation and the supplemental plantings will result in a landscaped buffer between the All Metals operations and the portion of the Town land retained by the Town.

33. This landscaped buffer is located wholly upon the land that All Metals leases from the Town.

34. The Parking Space Layout Plan, Exhibit C, identifies a snow storage area along the western edge of the Williston facility. This area does not obstruct access to parking spaces.

35. On September 9, 2011, Sanborn, Head & Associates, on behalf of All Metals, submitted a discretionary permit application to the Town Zoning Administrator to "[e]stablish an outdoor storage area and install a scale house and scale to accommodate [the] existing metals recycling operation." The permit application identifies All Metals as the "Facility Operator."

36. On October 25, 2011, the DRB considered and approved the discretionary permit application.

37. Neighbors timely appealed the discretionary permit.

## Conclusions of Law

Neighbors' Question 10 asks whether All Metals' application for a discretionary permit should be denied for failure to demonstrate adequate provision for off-street parking and loading as required by Chapter 14 of the Bylaw. Bylaw Chapter 14 sets standards for off-street parking and loading and applies to all development for which a permit is required. Bylaw § 14.1.1. "Existing and proposed parking and loading areas must be clearly shown on the plans submitted with any application for a permit." Id.

All Metals seeks a discretionary permit for its outdoor storage, a scale, and a scale house, to be located within the area it currently subleases from both ReSOURCE and the Town. The application before us, and therefore our review, does not include ReSOURCES' space which is not subleased to All Metals. Additionally, our review does not consider the Charbonneau unit or the activities associated with that unit.

In our prior April 4, 2013 decision, we summarized All Metals operations as the purchase, sorting, and sale of scrap metal for recycling. We concluded that All Metals seeks a permit to operate a materials recovery facility. In re All Metals Recycling, Inc., No. 171-11-11 Vtec, slip op. at 6 (Vt. Super. Ct. Envtl. Div. Apr. 4, 2013). Evidence admitted at trial supports these determinations. Thus, we continue to conclude that All Metals' proposed use is a permissible use in the Gateway Zoning District North.

### The Number of Parking Spaces:

All Metals asserts that no new or additional parking beyond existing parking is required under the Bylaw. Bylaw Table 14.A establishes the minimum parking requirements for certain development types. It does not, however, list a "materials recovery facility" or "outdoor storage area, scale or scale house." Bylaw § 14.2.3 states that if a specific use is not listed in Table 14.A, then the Administrator shall determine the number of parking spaces needed based

5

on similarity of the proposed use to one or more of the uses listed in Table 14.A. All Metals' operations fit most appropriately under the "Industrial" category in Table 14.A. To determine the necessary amount of parking for a project in the Industrial category one must "[u]se 1.00 spaces per 1000 [square feet of gross floor area] as a starting point" but "[t]he actual requirement will be set by the Administrator or DRB." Bylaw Table 14.A. In this *de novo* appeal, this Court considers the application as though the Court were the Administrator. V.R.E.C.P. 5(g); see also In re Torres, 154 Vt. 233, 235-36 (1990) (noting that "[t]he reach of the superior court in zoning appeals is as broad as the powers of a zoning board of adjustment or a planning commission" and "whatever the zoning board of adjustment or the planning commission might have done with an application properly before it, the superior court may also do if an appeal is duly perfected").

We consider only All Metals' leased floor area of 463 square feet to initially determine the required number of parking spaces. Thus, as a starting point, using one space for every 1,000 square feet of floor area, the project requires one parking space to satisfy the Bylaw. As the Bylaw directs that the actual number of required parking spaces be set by the Administrator, and therefore this Court on appeal, we consider whether the application requires more than one parking space. Based upon the evidence received at trail, we conclude that more than one parking space is necessary. First, All Metals typically has three employees working at the site. Additionally, Randy Towns, one of the owners and a manager of All Metals, spends about half of his time at the site. It is also common for All Metals to have up to 4 or 5 customers at its site at any given time. Finally, Bylaw § 14.3.1 and Table 14.B require one handicap accessible parking space. Thus, we conclude that 10 parking spaces are required to accommodate potential parking needs under the application. As described below, we conclude that All Metals' application satisfies this requirement.

All Metals' June 2013 second amendment to its sublease with ReSOURCE expressly provides All Metals with exclusive use of 10 parking spaces located within the area of the sublease. All Metals' Parking Space Layout Plan, Exhibit C, depicts the 10 parking spaces for All Metals' exclusive use, including one handicap space at the front of the building space leased by All Metals. All of these spaces satisfy the dimensional requirements set forth in Bylaw Table 14.C. All Metals' Parking Space Layout Plan, Exhibit C also depicts 4 employee parking spaces located on the portion of Town property leased by All Metals.

6

Appellants assert that Bylaw § 14.2.7.1 requires all off-street parking to be located on the same lot and under the same ownership as the use they serve. As such, Appellants argue that these 4 parking spaces on Town land cannot be used to satisfy parking requirements. We find this argument unpersuasive.

All Metals conducts its operations on both the land it leases from ReSOURCE and the land it leases from the Town. All Metals' use crosses the property boundary line and includes the proposed scale and scale house on the portion of land it leases from the Town. Thus, the 4 spaces on the land owned by the Town are in fact located on the same lot and under the same ownership as the use they serve. Moreover, we will not interpret zoning regulations in ways that lead to irrational results. See Stowe Club Highlands, 164 Vt. 272, 280 (1995) (refusing to interpret regulation such that it leads to irrational results). We conclude that reading the ownership requirement of Bylaw § 14.2.7.1 to prohibit parking on one of the two leased areas but not the other is irrational. Thus, because all 14 proposed parking spaces are located on land controlled by All Metals under its leases with ReSOURCE and the Town, and becauseAll Metals operates its business on portions of both properties, we find this proposal complies with the ownership requirement of Bylaw § 14.2.7.1.

We also recognize that Bylaw § 14.2.1 states that the number of parking spaces provided by Table 14.A is both a minimum and maximum for a particular project. The Bylaw also provides, however, that the Administrator or DRB, and therefore this court on appeal, has discretion to determine the required parking for Industrial uses. In exercising this discretion under these circumstances, we find that All Metals' proposal for 14 parking spaces is appropriate for its particular use, provides a reasonable number of spaces for employees and customers, and does not amount to excessive parking.

Lastly, as required by Bylaw Table 14.A, All Metals must provide for one bicycle parking space. While the Parking Space Layout Plan does not depict this space, Brian Beaudoin, All Metals' engineer who contributed to the Parking Space Layout Plan, testified that one bicycle parking space could be located in the metals processing area. With this additional feature, Table 14.A as relating to bicycle parking is satisfied.

Thus, we conclude that the number and dimensions of parking spaces specifically designated for All Metals use as illustrated on the Parking Space Layout Plan complies with Bylaw Chapter 14 if supplemented with a single bicycle parking space.

**Parking Lot Setbacks, Buffers, and Snow and Ice:**

Neighbors argue that All Metals' proposed parking does not comply with the Bylaw because of insufficient setbacks and buffers and because the application does not satisfy the Bylaw provisions relating to snow and ice.

Regarding setbacks, Neighbors argue that the site's parking areas infringe upon the 25 foot setback from James Brown Drive and Dorset Lane. See Bylaw § 33.3.3.2 (requiring a 25 foot setback from all roads except Route 2A in the Gateway Zoning District North). Bylaw § 46.7.4 dictates that where the setback applies to parking areas we are to measure at grade from the nearest point on the property or right-of-way line to the outer edge of the parking surface. The parking surface along the eastern and southern sides of the existing parking lot is located within the 25 foot setback from James Brown Drive and Dorset Lane. All Metals does not lease, propose any activity upon, or propose any physical modification to these areas. This encroachment into the setback from James Brown Drive and Dorset Lane, although a nonconformity, is therefore not fatal to All Metals' application.

Under the Bylaw, a nonconforming structure is a structure or part of a structure that does not conform to the present Bylaw, but was in conformance with all applicable regulations prior to the enactment of the present Bylaw, including a structure improperly authorized as a result of error by the administrative officer. Bylaw § 2.6.1. We construe zoning ordinances according to general principles of statutory construction, applying the plain language of the ordinance where it resolves the issue and comports with the overall scheme and intent. Appeal of Weeks, 167 Vt. 551, 554 (1998). The parking lot does not precisely fall within the Bylaw definition of nonconforming structure. However, it does not fall outside of this definition either. Parking lots are physical improvements to sites, they are associated with buildings, and are subject to setback limitations pursuant to the Bylaw.[2] We thus consider the parking lot in this matter as a nonconforming part of a structure. The parking lot on the eastern and southern portions of the site was authorized by the Town in 1982 and the present application does not propose to alter these portions of the parking lot.[3]

---

[2] The Bylaw provides no general definition of a structure. It does define structure specifically for floodplain management and insurance purposes, both of which are irrelevant to our considerations in this appeal. See Bylaw § 46.7.8.

[3] While Appellants assert that portions of the existing building and property may not comply with the Town's 1982 approval, such issues are not within our scope of review. To be clear, this is not an enforcement action, and we review All Metals' application specifically under the question raised to the Court.

A notation within the Bylaw at § 2.6 states:

> Is allowing the replacement or enlargement of a nonconforming structure good policy? First, remember that a conforming use can be housed in a nonconforming structure. This means that the replacement or enlargement of a nonconforming structure may not result in a change in the nature or extent of a nonconforming use. Second, refusing to allow the replacement of nonconforming structures often results in blight, as these structures are not maintained. Allowing replacement may result in an improvement. Finally, most nonconforming structures are not nonconforming in every dimension. Consider a building that is too close to a stream or property line. The side nearest the stream or property line is nonconforming, but as long as that side doesn't change, it may be possible to expand the building in another direction in full compliance with this bylaw…

Again, All Metals does not seek any use, modification, or expansion of the existing parking lot on the easterly and southerly sides of the building. The notation quoted above evidences the clear intent of the Bylaw drafters that so long as a particular nonconformity is not altered, changes can occur within a development as otherwise permitted. Thus, based on this clearly evidenced intent, the fact that the existing parking lot encroaches into the setbacks from James Brown Drive and Dorset Lane does not render the application non-compliant with the Bylaw.[4] These existing nonconformities of the site may continue.[5] See Bylaw § 2.6.2 (allowing for continuation of nonconforming structures).

Although Appellants did not raise the possibility of requiring a correction of this nonconformity of the site, we note that Bylaw § 2.8 empowers the DRB, or this Court on appeal, to require that nonconformities be corrected as a condition of approval of a discretionary permit. This corrective power is limited to requiring work that is reasonably proportional to the scale of the proposed development. Because All Metals does not seek any use of or alteration to

---

[4] Having found that the parking lot fits within the definition of a nonconforming structure we need not determine whether it is also a nonconforming use. We do note, however, that as All Metals does not propose to change the use of the nonconforming parking lot in any way. Our analysis would be the same under Bylaw § 2.5 allowing for the continuation of nonconforming uses. We also note that our decision on this issue is based on the Court's reading and interpretation of the Bylaw alone and we therefore did not consider the testimony of the Administrator regarding past implementation or interpretation of the Bylaw.

[5] Appellants also argue that All Metals lost any vested rights to use the parking spaces according to the Town's 1982 approval. Vested rights pertain only to an applicant's ability to have a project reviewed under the set of regulations in force at the time of a completed application. There is no question raised about which regulations govern the application and therefore no issue of vested rights. The 'right' to keep the southern and eastern portions of the parking lot as they are results only from the permissible continuation of preexisting nonconformities under the Bylaw.

these nonconforming areas of the existing parking lot, we conclude that All Metals' proposal does not warrant a correction of the encroachment of the parking lot into the setbacks from James Brown Drive and Dorset Lane.

Neighbors also argue that the application does not satisfy Bylaw Table 23.A regarding landscaped buffers. The Bylaw provides specific buffer parameters based on the type of landscaped buffer. A Type I buffer is "composed primarily of existing woodland or forest" and "must be relatively wide to sustain its habitat value and to function as a woodland or forest that needs only minimal maintenance." Bylaw § 23.3.2.2. Type II landscaped buffers are composed of dense continuous screening vegetation and are not permitted in the GZDN. Id. at § 23.3.2.3. Type III landscaped buffers are called "Informal Plantings" and "must be composed of a planted area that includes a ground cover, a partial understory or shrubs and small trees, and major trees." Id. at § 23.3.2.4. Between the All Metals use and the Town use a Type I buffer must be 50 feet and a Type III buffer must be 9 feet. Id. at Table 23.A.

All Metals proposes supplemental plantings along the northern line of the 0.27 acres it leases from the Town to create a Type III landscaped buffer between the All Metals operations and the rest of the Town land. This Type III landscaped buffer will be at least 9 feet wide between the adjoining heavy commercial/industrial uses and will therefore meet the Bylaw requirements. See Bylaw Table 23.A. Although Neighbors argue that a fifty foot Type I buffer is appropriate here, they point to nothing in the Bylaw that requires one. As there is not currently a fifty foot wide woodland or forest separating these uses, a Type I buffer does not apply.

Nothing in the Bylaw requires this buffer to be measured from the common boundary between the ReSOURCE parcel and the Town parcel. Rather, the Bylaw requires that the buffer be located between the adjoining land uses. See Bylaw §23.3 (defining required buffers by the different uses they separate, without reference to parcel boundary lines). Furthermore, pursuant to Bylaw § 23.3.5, the inclusion of the landscaped buffer eliminates the need for a rear (or side) yard setback for this portion of the proposed project. Thus, the definition of setback as emphasized by the Neighbors is irrelevant, as no setback is required. Locating the landscape buffer at the parcel boundary line would simply bisect All Metals' single use rather than separate one use from another as required by the Bylaw. Thus, the 9 foot wide Type III buffer, created and maintained along the northern

10

portion of the land All Metals leases from the Town satisfies both the landscaping and setback requirements of the Bylaw.

Neighbors next challenge the adequacy of the application as relating to snow storage. Bylaw § 16.6 regulates snow removal and storage. The only provision relative to parking dictates that snow storage shall not occur on or obstruct any parking. Bylaw § 16.6.3.3. The Parking Space Layout Plan, Exhibit C, identifies a snow storage area along the western edge of the property. In accordance with Bylaw § 16.6.3.3, this area does not obstruct access to parking spaces. We conclude that our review of snow storage is limited to parking issues, and as such, the application complies with the Bylaw with regard to adequate snow storage.

Lastly, Appellants argue that Bylaw § 22.5.2, protecting parking areas from ice and snow sliding off of roofs, applies to this application. We disagree. Chapter 22 is the design review portion of the Bylaw. The design review chapter applies to new construction and major additions to existing buildings only. Bylaw § 22.2.2. Because the application does not entail new construction or a major addition to the existing building, we conclude that the application does not undergo design review. Therefore, the application's compliance with Bylaw § 22.5.2 is not before us.

### Conclusion

For the reasons discussed above, we conclude that All Metals' application for a discretionary permit provides adequate provision for off-street parking and loading as required by Chapter 14 of the Bylaw. As we previously rendered our decision on the other issues before the Court, we AFFIRM the DRB's grant of a discretionary permit subject to the following additional condition:

1. All Metals must provide for one bicycle parking space in the metals processing area.

All Metals' application for a discretionary permit is hereby remanded to the Williston Zoning Administrator so as to complete the ministerial act of issuing the discretionary permit to All Metals in accordance with this Merits Decision and the un-appealed determinations of the Williston Development Review Board.

A Judgment Order accompanies this Decision. This completes the current proceedings before this Court.

Done at Berlin, Vermont, this 1st day of November, 2013.

_____
Thomas G. Walsh, Environmental Judge

11